exempt from taxation, having been purchased with pension money. Denied.

George C. Carter, for petitioner.
George C. Morehouse, opposed.

---

(16 Misc. Rep. 134.)

## In re COLE.

### (Oneida County Court.   February, 1896.)

CITY COUNCIL—REFUSAL OF WITNESS TO TESTIFY BEFORE COMMITTEE.
    A resolution of a city council, appointing a committee to look after all bills from the various departments of the city government, and to send for papers, and to employ counsel and experts, does not authorize it to ask a witness summoned before it whether he had seen any gambling in

the city, or any places where liquor was sold without a license, and he is therefore not punishable for contempt in refusing to answer such question.

Proceeding to punish J. Soley Cole for contempt in refusing to answer questions put to him by a committee of the common council of the city of Utica appointed under a resolution to look over the bills from various city departments. The resolution as first offered applied only to the "city surveyor's department and all of the departments in the city hall." An amendment was moved so as to make the resolution apply to "all the departments pertaining to the city," and the amendment was accepted, and as amended the resolution was adopted. Defendant was summoned as 'a witness before the committee, and was asked whether he had seen any faro tables and roulette wheels; whether he had seen them in operation within four or five weeks; whether he knew anything of places in town where liquor was sold without a license. Witness declined to answer on the ground that the committee had no authority to ask such questions. Defendant discharged.

A. M. Beardsley, for the motion.
John E. Brandegee, opposed.

DUNMORE, J. The original resolution and amendment embraced in one resolution, all surplusage being omitted, would read as follows:

"That a committee of three be appointed to look over all bills from the city surveyor's department, the police and fire board, charity board, school board, city court, and all departments pertaining to the city, and be empowered to send for persons and papers and employ counsel and experts."

All the power the committee had it derived from the above resolution. The real inquiry before me is whether the questions addressed to witness Cole as to his knowledge of faro tables and roulette wheels being in operation in the city, and as to his knowledge of unlicensed saloons being conducted in the city, were within the power conferred upon the committee by the above resolution. In Briggs v. Mackellar, 2 Abb. Prac. 30, the court states the rule applicable to such cases as follows:

"The two questions asked Webster had reference to his nativity, and the witness McCann was asked of what country he was a native. These questions were irrelevant. The committee were directed to inquire or investigate as to any frauds or corruptions in any branch of the police department, and the manner in which it had been conducted, and they were confined to that subject and could not enter upon any other. Whether an inquiry as to the nativity of the persons composing the police department would or would not be an appropriate subject of inquiry on the part of the common council, it is not necessary to determine. It is sufficient that it was not embraced in the resolution referred to the committee."

The same rule was laid down in Van Tine v. Nims, 3 Abb. Prac. 39. Courts have adopted a strict, rather than a liberal construction of the powers of common councils of cities, and of committees appointed by them. Dill. Mun. Corp. § 91, states the rule as follows:

"It is a well-settled rule of construction of grants by the legislature, whether public or private, that only such powers and rights can be exercised under them as are clearly comprehended within the words of the act or derived

therefrom by necessary implication, regard being had to the objects of the grant. Any ambiguity or doubt arising out of the terms used by the legislature must be resolved in favor of the public."

Again, in section 89, it says:

"Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied."

Certainly the construction should be no less strict against the power of a committee of a common council than against the power of the original body from whom such committee derived its powers. Applying a much more liberal rule of construction than the authorities above quoted permit, it is clear that the committee had no power to investigate as to whether faro tables or roulette wheels were in operation, or whether unlicensed saloons were being conducted in the city. The resolution simply empowered the committee to look over the bills of the different departments and employ such counsel and experts as would enable them to do that. The committee had no power except such as was clearly comprehended or necessarily implied within the words of the resolution. Certainly the power to inquire whether the gambling or excise laws were being violated was neither clearly expressed nor necessarily implied within the words of that resolution. A resolution of this kind is in the nature of a delegation of power. The resolution should be explicit as to what power is delegated, and the committee should be limited to that. Whether the council had power to authorize such an investigation, or whether it would have been a wise exercise of power, is not before me. The only question here is, did the resolution in question authorize the committee to investigate the questions inquired about? The foregoing views lead to the conclusion that it did not. The motion is therefore denied, and the witness discharged.

Motion denied, and witness discharged.